```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION


TAMMY R. SMITH,                    )
                                   )
              Plaintiff,           )
                                   )
         vs.                       )      No. 4:08CV334-DJS
                                   )
MARK WYNN,                         )
                                   )
              Defendants.          )
```

### ORDER

Now before the Court is defendant Officer Mark Wynn's motion for summary judgment [Doc. #29] of plaintiff Tammy Smith's 42 U.S.C. §1983 claims asserted against him.[1] The matter has been fully briefed and is ready for disposition.

**Standard of Review**

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or

---

[1]The Court notes that defendants Phelps County, Missouri, Phelps County Sheriff's Department, and Don Blankenship have previously been dismissed from the case.

allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

**Facts**

For purposes of this motion, the Court finds that the following facts are not in dispute, or have not been properly controverted pursuant to E.D.Mo. L.R. 7-4.01(E).[2] The following facts are those established by the depositions, affidavits, and records submitted by the parties, and are viewed in the light most favorable to plaintiff.

At all times relevant hereto, defendant was employed as a deputy sheriff by the Phelps County Sheriff's Department. On November 28, 2007, City of Rolla Police Officer Frank Magel of the South Central Missouri Drug Task Force was conducting surveillance during an undercover drug transaction in Phelps County, Missouri. Pursuant to this surveillance, Magel observed a white female with blonde hair driving a white SUV, traveling towards the "target" house. Magel continued his surveillance and was informed by his partner that a white female with blonde hair, with the first name of "Tammy," was involved in the undercover drug transaction and had just left the "target" house.

Magel spoke with defendant in a parking lot adjacent to Highway 63 and informed him of the details regarding the

---

[2]"All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 7-4.01(E).

investigation. As the two were speaking, Magel observed plaintiff, who had blonde hair and who Magel thought resembled the female suspect involved in the undercover drug transaction that occurred moments earlier, driving down Highway 63. Magel also observed plaintiff driving a white SUV very similar in appearance to the one driven by the suspect. Both defendant and Magel allege that plaintiff was following to closely to the vehicle in front of her, although plaintiff states that she was approximately four to five car lengths behind the vehicle in front of her and was traveling approximately 50 to 55 miles per hour.

Defendant followed plaintiff on Highway 63 and initiated a traffic stop. After pulling plaintiff over to the shoulder, defendant approached plaintiff's driver's side door and informed her of the traffic violation observed and requested that she produce her license and registration. Defendant observed that plaintiff's first name was identical to the suspect's first name. Defendant requested that plaintiff sit in his vehicle's passenger seat while he sat in the driver's seat to fill out a "warning form" for her traffic violation.

While filling out a warning form, defendant informed plaintiff of the information he had received regarding the recent drug transaction. Plaintiff stated she did not do drugs and that she was a "church lady." Defendant asked plaintiff if it was okay to search her vehicle and its contents, to which she responded, "yes." Defendant had his drug K-9, "Idol," sniff the exterior of plaintiff's vehicle. Idol alerted on plaintiff's driver's side

door handle. Defendant then requested the assistance of a female officer to conduct a pat-down search of plaintiff and, while awaiting the arrival of the female officer, searched plaintiff's vehicle. Defendant did not find any contraband during this search. Defendant did find two bibles.

Officer Christina Smith then arrived on the scene. After Smith arrived, defendant came over to her and said he had stopped plaintiff because he had information "she has drugs on her." Smith conducted a pat-down search of plaintiff. Defendant was standing at a distance behind Smith and plaintiff during the pat-down search of plaintiff. Plaintiff never told any officer on the scene that they could not search her person, although plaintiff states that she was upset when she realized Smith was going to pat her down. The pat-down search lasted approximately a minute or a minute-and-a-half. Again, no contraband was found, and plaintiff was instructed that she was free to leave.

The entire traffic stop took approximately twenty minutes. Plaintiff states that she was standing on the edge of the highway with her hands on her head, her feet spread, leaning back with Smith's leg behind her. Plaintiff further states that the pat-down search included Smith's hand going up under the breasts of the plaintiff, with the back of Smith's hand from outside plaintiff's shirt, under the lining of plaintiff's brassiere. However, there is no evidence or argument that the search was sexually harassing.

**Discussion**

To state a claim under 42 U.S.C. §1983, a plaintiff must show that "persons acting under the color of state law deprived [him] 'of rights, privileges, or immunities secured by the Constitution.'" Gregory v. City of Rogers, 974 F.2d 1006, 1009 (8th Cir. 1992) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986)). Plaintiff's complaint asserts two 42 U.S.C. §1983 claims against defendant. The first is a claim that the initial traffic stop of plaintiff by defendant was not supported by probable cause, in violation of the Fourth Amendment. The second is a claim that defendant unreasonably searched plaintiff's person, in violation of the Fourth Amendment. These are two distinct Fourth Amendment claims, and the Court will separately analyze each constitutional violation below.[3]

**Pat-Down Search of Plaintiff's Person**

The Fourth Amendment of the Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." However, "[p]olice are permitted to make investigatory stops and to conduct limited searches for weapons when, in light of their experience, they reasonably believe that criminal activity may be afoot, and that the suspects involved may be armed and dangerous." When the suspected crime is possession of drugs, it is reasonable

---

[3]The Court finds that plaintiff either never asserted, or has abandoned a claim that the search of her car was impermissible. However, the Court notes that it is undisputed that plaintiff gave defendant consent to search her car.

- 5 -

to infer that the suspect may be armed and dangerous.  See United States v. Robinson, 119 F.3d 663, 667 (8th Cir. 1997) ("It is reasonable for an officer to believe that an individual may be armed and dangerous when that individual is suspected of being involved in a drug transaction because weapons and violence are frequently associated with drug transactions.") (quotation omitted)).

As an initial matter, the Court notes that there is no dispute that it was Smith, not defendant, that conducted the pat-down search of plaintiff.  Plaintiff argues that Smith did this at defendant's direction, and therefore defendant should be held jointly liable for the alleged constitutional violation. Defendant argues that since defendant was not directly conducting the pat-down search, he cannot be held liable.  However, defendant's argument is without citation to legal support, and accordingly the Court will proceed under the assumption that defendant can be held liable if the pat-down search of plaintiff violated the Fourth Amendment.

Plaintiff argues that, for an officer to conduct a constitutionally proper protective pat-down search pursuant to Terry v. Ohio, 392 U.S. 1 (1968),[4] that officer must be looking for a weapon.  Plaintiff argues that if a protective search goes beyond that necessary to determine if the suspect is armed, it is no

---

[4]Terry provides an exception to the warrant requirement for limited searches of persons stopped by police if the police reasonably suspect the individual is armed.  See United States v. Pratt, 355 F.3d 1119, 1121 (8th Cir. 2004).

longer a constitutionally valid search.  Plaintiff further argues that in this case there is a disputed fact as to whether, when defendant asked Smith to perform the search, he was looking to find a weapon <u>or</u> drugs.

In this case, defendant reasonably regarded plaintiff as a drug suspect because she matched the description given to him of an individual who had just made a drug purchase; his drug-sniffing K-9 alerted to the presence of drugs; and, in defendant's opinion based on his experience, plaintiff's behavior was suspicious.  The Court finds that, under these facts, defendant reasonably believed that plaintiff possessed illegal drugs.  Even if defendant did not explicitly verbalize his concern that plaintiff had a weapon, under Eighth Circuit case law, because of his suspicion of drug possession it was reasonable for him to believe that she was armed.  Therefore, the pat-down search fell within those searches allowed by the Constitution.  Accordingly, the Court will grant summary judgment in defendant's favor with regard to the search of plaintiff's person.[5]

**Initial Traffic Stop**

Although the Court above finds that the subsequent pat-down search of plaintiff's person was proper, the initial stop is separable from that search, and requires additional consideration.  The Supreme Court has stated that "[t]emporary detention of

---

[5]The Court notes that the allegations in plaintiff's complaint implicate only whether a pat-down search was permissible, and not that the manner in which Smith conducted the search itself was, for instance, sexually harassing, or otherwise unduly oppressive.  Further, such a claim would need to be asserted against Smith.

individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of" the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-810 (1996). Therefore, pursuant to the Fourth Amendment, a traffic stop must "be supported by reasonable suspicion or probable cause." United States v. Houston, 548 F.3d 1151, 1153 (8th Cir. 2008). A traffic violation, no matter how minor, provides the requisite probable cause. Id. Regarding general criminal activity, "[a] law enforcement officer has reasonable suspicion when the officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" Id. (quoting United States v. Martin, 706 F.2d 263, 265 (8th Cir. 1983)).

> It is well settled that under certain limited circumstances, law enforcement officers may stop a motor vehicle for investigative purposes. Such a stop is permissible when the officers are aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.

Martin, 706 F.2d at 265.

For purposes of the instant motion, the Court accepts as true plaintiff's contention that she was traveling four to five car lengths behind the automobile in front of her. Nevertheless, the Court finds that defendant had the requisite particularized and objective grounds reasonably to infer that criminal activity was afoot, including defendant's knowledge of Magel's belief that

plaintiff resembled the female suspect involved in the undercover drug transaction that occurred moments earlier, and that plaintiff was driving a white SUV similar in appearance to the one driven by the suspect. Accordingly, the Court finds that the initial stop did not violate plaintiff's Fourth Amendment rights.

Further, as a practical matter, the Court finds that summary judgment should be granted in defendant's favor because, as stated by the Seventh Circuit Court of Appeals, a routine traffic stop is an ordinary incident of driving, which, absent additional facts that elevate such a stop to more than the mundane, does not give rise to an intrusion actionable under 42 U.S.C. §1983.

> [A] stop of a vehicle by a police officer, though not an arrest within the meaning that the courts have impressed on the Fourth Amendment, is a "seizure" within the meaning of that amendment, and will not pass constitutional muster unless based on articulable suspicion that a traffic offense has been committed. We have not found a case, however, in which someone stopped for a simple traffic violation obtained damages in a federal constitutional tort suit on the ground that the officer did not have an articulable suspicion of a violation.... Maybe this is just because the damages would be too slight to support the expense of suing, but we hope not; we hope that the judicially engineered expansion of constitutional law from its modest textual base has not reached the point where every one of the millions of traffic stops of speeders and other traffic offenders made every year becomes a candidate for a federal suit.... <u>Unlike an arrest, a routine traffic stop is an ordinary incident of driving</u>.

<u>Ford v. Wilson</u>, 90 F.3d 245, 248 (7th Cir. 1996) (emphasis added) (internal citations omitted). Given the facts in this case, a single traffic stop without any evidence of, for example, racial

pretext, it appears the stop can fairly be described as "routine." Accordingly, the Court will grant summary judgment in defendant's favor with regard to the initial traffic stop.

For the above stated reasons,

**IT IS HEREBY ORDERED** that defendant Mark Wynn's motion for summary judgment [Doc. #29] is granted.

**IT IS FURTHER ORDERED** that all other motions are denied as moot.

**IT IS FURTHER ORDERED** that the July 6, 2009, trial setting is hereby vacated.

Dated this ___19th___ day of June, 2009.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE